



**FILED**
3/6/2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

GMM

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. %&) !W!$$% & >i X[ Y'H' ca Ug'A "8 i f_]b' A U[ ]gif U H' >i X[ Y' > YUbb]W"K "5 dd Y bh Y b[ F 5 B 8 C A '#7 U H' |
| | ) | |
| | ) | |
| vs. | ) | |
| | ) | Violation: 18 U.S.C. § 1343 |
| | ) | |
| DARREN CARLYLE SADLER | ) | |

The ACTING UNITED STATES ATTORNEY charges:

1.      At times material to the information:

        a.      The U.S. Small Business Administration ("SBA") was a United States government agency that provided support to small businesses.

        b.      The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic.

        c.      One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program called the Paycheck Protection Program ("PPP"). Congress subsequently authorized an additional $465 billion in PPP Funding, for a total of about $814 billion.

        d.      To obtain a PPP loan, a business submitted a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative)

to acknowledge the program rules and make certain affirmative certifications regarding its eligibility. In the application, the small business's authorized representative was required to provide, among other things, the business's average monthly payroll expenses and number of employees. These figures were used to calculate the business's eligibility and the amount of money it could receive under the PPP. Applicants were also required to make good faith certifications, including that economic uncertainties necessitated their loan requests for continued business operations.

        e.     PPP loan proceeds were required to be used by the business for certain permissible expenses, such as payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on a PPP loan to be entirely forgiven by the SBA if the business spent the loan proceeds on these items within a designated period of time and used at least a certain percentage of the PPP loan for payroll expenses.

        f.     To gain access to funds through the PPP, small businesses applied through third-party lenders approved by the SBA. Participating lenders required applicants for PPP loans to provide truthful information about the business and its owner, including truthful information about the business's operating expenses, the business's employees, and how the PPP loan would be used, which information was material to lenders' approval, terms, and funding of loans.

        g.     Defendant DARREN CARLYLE SADLER owned and operated two entities, Milan Equity, LLC, and Milan Financial, LLC, that were registered,

2

respectively, in the states of Wyoming and Alabama. Both businesses were engaged in the business of obtaining loans and lines of credit through third-party lenders for small businesses. Neither business had any employees.

       h.    Defendant registered a purported business called the Barber Colleges of America with the state of Wyoming. The purported business had no employees or physical office location.

2.    From in or about March 2020, and continuing through in or around December 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

DARREN CARLYLE SADLER,

defendant herein, along with others including Co-Schemer A and Co-Schemer B, devised, intended to devise, and participated in a scheme to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

3.    It was part of the scheme that defendant for the purpose of fraudulently obtaining PPP funds on behalf of himself and purported clients, submitted and caused to be submitted fraudulent applications and supporting documents to third-party lenders and to the SBA, which applications and supporting documents contained materially false representations concerning, among other things, the applicant's purported employees and average monthly payroll.

4.    It was further part of the scheme that, in or around March 2020, defendant began to solicit previous clients of Milan Equity, LLC, and Milan Financial,

3

LLC, to offer his assistance in obtaining PPP loans for their businesses and to find additional clients by using recruiters, including Co-Schemer B.

5.     It was further part of the scheme that, with the assistance of Co-Schemer A, defendant developed a list of information and documents that potential applicants needed to gather and provide to him for purposes of applying for PPP loans through his loan brokerage businesses, and defendant provided this list of information and documents to clients who responded to his solicitations or were otherwise referred to him for assistance in obtaining PPP loans.

6.     It was further part of the scheme that, with the assistance of Co-Schemer B and other recruiters, defendant recruited over 63 business owner clients interested in obtaining PPP loans.

7.     It was further part of the scheme that, after receiving information and documents from these business owner clients interested in obtaining PPP loans, defendant caused the creation and completion of PPP loan applications for these business owner clients that contained false information regarding the number of their employees and their payroll.

8.     It was further part of the scheme that defendant caused the loan applications containing this false information to be submitted to various third party lenders for the purpose of obtaining PPP loans for his business owner clients.

9.     It was further part of the scheme that defendant and Co-Schemer A caused the submission of false and fictitious documents created by Co-Schemer A,

4

including false tax forms and payroll summaries, in connection with the false PPP loan applications submitted to the third-party lenders.

10.     It was further part of the scheme that defendant created false email addresses that he controlled for his business owner clients and provided those false email addresses to the third-party lenders in order to conceal his involvement with the PPP loan applications. Defendant also utilized virtual personal networks to make it appear that the applications were being submitted by the business owner clients from an IP address in the area where they did business.

11.     It was further part of the scheme that defendant caused the business owner clients for whom he fraudulently obtained PPP loans to pay him with a fee from the loan proceeds with the amount of the fee being based upon percentage of the loan amount, a portion of which he shared with others.

12.     It was further part of the scheme that defendant filed false PPP loan applications for his own purported businesses, namely, Milan Equity, LLC, Milan Financial, LLC, and the Barber Colleges of America, containing false information regarding the number of employees and monthly payrolls for those business in order to receive PPP loans that he was not entitled to receive for those businesses.

13.     It was further part of the scheme that defendant misrepresented, concealed, and hid and caused to be misrepresented, concealed, and hidden, certain material facts, including the acts and purposes of the acts done in furtherance of the scheme.

5

14.     On or about May 6, 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

DARREN CARLYLE SADLER,

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, signals, and sounds, namely, a communication related to the transfer of approximately $268,100 from Customer's Bank in Pennsylvania, into the First American Bank account of Business Owner A in Elk Grove Village, Illinois, representing the proceeds of a PPP loan;

In violation of Title 18, United States Code, Section 1343.

<u>FORFEITURE ALLEGATION</u>

The ACTING UNITED STATES ATTORNEY further alleges:

1.     Upon conviction of an offense in violation of Title 18, United States Code, Section 1343, as set forth in this Information, defendant shall forfeit to the United States of America any property which constitutes and is derived from proceeds traceable to the offense, as provided in Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2.     If any of the property described above, as a result of any act or omission by a defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property, as provided in Title 21, United States Code Section 853(p).

MICHELLE PETERSEN Digitally signed by MICHELLE PETERSEN
Date: 2025.03.04 11:58:02 -06'00'    for MP
_____
ACTING UNITED STATES ATTORNEY

7